■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES POWELL, Appellant. — Judgment, Supreme Court, New York County, rendered on May 9, 1979, convicting defendant, after trial by jury, of criminal possession of a weapon in the third degree and imposing a sentence of time served, is affirmed. The fundamental issue confronting us is whether defendant was in his "home" when arrested. Defendant was charged in a one-count indictment with criminally possessing a loaded weapon while not in his home or place of business. (Penal Law, § 265.02, subd [4]). Defendant was arrested in the lobby of the Men's Shelter, by police officers of the Human Resources

Administration. These officers had been alerted by a client in the shelter, that a man, later identified as the defendant, had threatened him with a gun in the fifth floor recreation area. The informant told the officers that defendant would be coming down in the elevator. Thereafter, the elevator door opened and defendant emerged into the lobby and headed toward the front door. The officers intercepted defendant and requested that he accompany them to the police room which was located off the lobby. There a pat down revealed that defendant was carrying a loaded revolver. The Men's Shelter is a six-story building on 3rd Street just off the Bowery, run by the Human Resources Administration. The basement of the building contains a dining room where meals are provided to clients of the shelter. The first floor is the street level floor where the lobby and reception areas are situated. In addition, this floor contains the patrolmen's office and locker rooms, a clerical office and the auditorium or "big room" where clients are permitted to sleep on rows of hard plastic chairs if they are unable to obtain alternate lodging. The second floor contains staff offices and a unit for bedridden clients. This latter unit has 15 to 16 beds and is designed primarily for those clients who are unable to go to a nearby hotel or who are in the process of being transferred to a nursing home. The third floor and mezzanine contain additional staff offices. The fourth floor contains the Manhattan Bowery Project which is not administered by the Human Resources Administration. The purpose of this organization is to run a detoxification program. The testimony at trial indicated that defendant never had an occasion to utilize this particular service. The fifth floor contains a recreation area and bathrooms. The sixth floor houses the library and more staff offices. Defendant had been utilizing the services of the Men's Shelter since 1975 and for a one- and one-half year period, from February, 1977 to September, 1978, defendant was a member of the shelter's permanent population unit. In order to be a member of this unit, a client had to be receiving the services of the shelter on "a fairly continuous basis". Some of the programs provided to members of this unit included lodging and counseling service, the arrangement of monthly meal tickets and clothing and maintenance of a referral program to other agencies. Defendant testified that since 1975, his permanent address was that of the shelter and that he used this address as his mailing and voting address. In addition, defendant asserted that he spent an average of four hours each day at this location. Arguably, certain aspects of life in the shelter could support a claim that the shelter constitutes one's home. In addition, there are facets of defendant's life-style that could bolster this argument as to him. However, the portion of the shelter in which defendant was arrested cannot be said to constitute his home. Defendant would have us determine that when arrested he was merely moving from one portion of his "home" to another. This argument is not persuasive. The testimony at trial and the realities of life indicate that defendant could not and did not have any expectation of privacy, as one would have in his home, in the lobby area. This portion of the shelter was traversed by approximately 1,000 clients and an undetermined number of visitors on a given day. The permitted sleeping area on this first floor was not the area in which defendant was apprehended. The auditorium is a separate area which had been described as an "overflow" area. The auditorium is utilized for temporary sleeping arrangements when clients either failed to register on time at a nearby hotel or, because other accommodations were filled. It, too, lacked any sense of permanency such as you might expect to find in one's home. Certain aspects of defendant's testimony would also indicate that he did not consider the shelter to be his home. For example, defendant indicated

that his presence at the home was seasonal and that he would sometimes sleep in hotels, on park benches and in hallways. The cumulative effect of the above is that in no sense of the word could the lobby of the Men's Shelter be described as this defendant's home. Therefore, the defendant is not entitled to the ameliorative effect of subdivision (4) of section 265.02 of the Penal Law. Concur — Murphy, P. J., Ross, Carro and Bloom, JJ.

Kupferman, J., dissents in a memorandum as follows: We are all agreed as to the issue and the facts and merely differ as to the conclusion. The question is whether the defendant is guilty of criminal possession of a weapon in the third degree, a felony, or criminal possession of a weapon in the fourth degree, a misdemeanor. The defendant was found with a loaded pistol in the lobby of the Men's Shelter on East 3rd Street in Manhattan. He was a member of the permanent population of such shelter, and therefore it was his only home. He would sleep in a large auditorium on the first floor called "The Big Room". This first floor also contained the lobby and a bathroom. To all intents and purposes, this lobby could be the equivalent of the foyer in a private home. Pursuant to subdivision 4 of section 265.02 of the Penal Law, if the possession of a loaded firearm takes place in a person's home and he has not previously been convicted of a crime (Penal Law, § 265.02, subd [1]), the crime is only a misdemeanor of criminal possession in the fourth degree. This defendant has not previously been convicted of a crime. The court in its charge to the jury made it quite clear that if the area involved was a public place, then "it cannot be the defendant's home". This undoubtedly followed the definition of public place in subdivision 1 of section 240.00 of the Penal Law. However, given the situation of a person living in a men's shelter, this had the effect of foreclosing the opportunity for the jury to consider his special situation. Under the circumstances, his guilt being acknowledged and having been sentenced to time served, there would be no purpose in remanding for a new trial. It would seem, therefore, that the judgment should be modified to the extent of reducing defendant's conviction to possession in the fourth degree. (See CPL 470.20, subd 4.)